IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2020 Session

## TINA VAUGHN v. DMC-MEMPHIS, LLC

**Appeal from the Circuit Court for Shelby County**
**No. CT-004360-17  Valerie L Smith, Judge**

_____

### No. W2019-00886-COA-R3-CV

_____

Plaintiff filed a claim in general sessions court for injuries she allegedly received when she fell in standing water on the defendant's premises. Judgment was rendered in favor of the defendant, and the plaintiff appealed to circuit court. The defendant then filed a motion for summary judgment arguing that it owed no duty to the plaintiff and that she was at least 50% at fault for her injuries. In support, the defendant relied on plaintiff's testimony from the trial in general sessions court. The circuit court granted the motion for summary judgment, and plaintiff again appealed. We vacate the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and CARMA DENNIS MCGEE, J., joined.

Tina Vaughn, Memphis Tennessee, Pro se.

Julia M. Kavanagh and Kyler S. Garmen, Memphis, Tennessee, for the appellee, DMC-Memphis, LLC.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff/Appellant Tina Vaughn filed this action in Shelby County General Sessions Court ("the general session court") alleging that Defendant/Appellee DMC-Memphis, LLC ("DMC") "failed to warn and timely clean a wet and slippery floor in the lobby and restroom" of DMC's building housing the Delta Medical Center. A trial was held on

October 4, 2017. Ms. Vaughn was represented by counsel and was the only witness. Ms. Vaughn testified that she was injured when she attempted to use a restroom of the medical center. Following redirect, the general sessions court judge questioned Ms. Vaughn about the sequence of events leading to the fall, without objection. Judgment was thereafter rendered for DMC. Ms. Vaughn timely appealed to Shelby County Circuit Court ("the trial court").

On December 12, 2018, DMC filed a motion for summary judgment and memorandum, arguing that Ms. Vaughn could not establish the element of duty because Ms. Vaughn had actual notice of the wet floor before she attempted to traverse it or, in the alternative, that Ms. Vaughn's fault was equal to or greater than any fault on the part of DMC. In support of the motion, DMC filed a statement of undisputed material facts that relied heavily on Ms. Vaughn's testimony in the general sessions trial. In particular, DMC submitted the following facts as undisputed:

> 4. At trial, Ms. Vaughn testified that she was at Delta Medical Center on December 21, 2015, to attend two medical appointments.
> 5. Upon arriving at Delta Medical Center, Ms. Vaughn first visited a restroom on the first floor.
> 6. Ms. Vaughn testified that, when she opened the door and entered the restroom, she immediately saw that "[t]here was a lot of water" and that the restroom "was pretty much almost flooded."
> 7. Ms. Vaughn repeatedly confirmed that she saw the water as soon as she entered the restroom.
> 8. After seeing the water, Ms. Vaughn proceeded to walk into the restroom where she then "slipped and fell."
> 9. After falling, Ms. Vaughn got up and walked into the restroom again and walked further into a restroom stall.
> 10. Ms. Vaughn was familiar with Delta Medical Center and was aware that another restroom was located down the hallway on the same floor that she could have used instead.

(Record citations omitted). Each fact was supported with a citation to Ms. Vaughn's own trial testimony from general sessions court, which was attached as an exhibit to the statement.

On January 2, 2019, Ms. Vaughn, now acting pro se, responded in opposition to DMC's motion. Therein, Ms. Vaughn asserted that additional discovery was necessary before she could respond to the motion for summary judgment. In particular, Ms. Vaughn asserted that she needed time to subpoena various records and staff from DMC that would show the length of time that the allegedly dangerous condition had existed, as well as doctors and therapists who had been involved in her treatment. Ms. Vaughn therefore asked for a continuance of the summary judgment hearing. Ms. Vaughn's response did not

address the substantive merits of DMC's motion.

DMC responded in opposition to Ms. Vaughn's request for a continuance on March 5, 2019. Therein, DMC argued that the discovery requested by Ms. Vaughn was irrelevant to its argument that Ms. Vaughn had actual notice of the wet floor, Ms. Vaughn had previously agreed that she would seek no further continuances beyond one that had been agreed to, and Ms. Vaughn was given ample time to respond to the motion for summary judgment.

On March 8, 2019, Ms. Vaughn filed a response and a memorandum of law in opposition to DMC's motion. Therein, Ms. Vaughn argued that there were genuine disputes of material fact that made summary judgment inappropriate. Specifically, Ms. Vaughn cited to photographs attached to her memorandum that she asserted showed that wet floor signs were not being properly used to notify Ms. Vaughn of the dangerous condition, while such signs were being used to warn of a dangerous condition in another location of the building used only by maintenance workers. According to Ms. Vaughn, "[s]urely, something so small and so very easily placed, such as A WARNING/CAUTION/WET FLOOR SIGN, most certainly could have and would have saved Plaintiff from years of pain, suffering, expense and emotional anguish." Ms. Vaughn further alleged that she could not wait to find another restroom and that she was not responsible for her injuries. Moreover, Ms. Vaughn argued that DMC improperly destroyed evidence concerning maintenance on the building related to her fall.

Ms. Vaughn did not assert in this response that a continuance was necessary in order to obtain additional discovery. Ms. Vaughn did, however, file a response to DMC's statement of undisputed material facts, in which she disputed facts six through ten, with citations to her trial testimony. Ms. Vaughn did not provide any detail as to specifically what she disputed as to each fact, but simply noted that the facts were disputed. Ms. Vaughn attached to her filing photographs of the area, her prehospital care report, a report from an outpatient radiology clinic, records from an orthopedic doctor, a patient questionnaire from an imaging center, a physical therapy report, and correspondence with DMC's attorneys.[1]

On March 20, 2019, the trial court entered an order setting the motion for summary judgment for hearing on April 5, 2019. The order noted that no further continuances would be granted.

On March 29, 2019, Ms. Vaughn filed a motion "to supplement [the] summary judgment record." Therein, Ms. Vaughn asserted that supplementation should be allowed for "newly discovered evidence or information" or materials that "were not known to

---

[1] One such letter concerned an included subpoena related to maintenance records of the building. DMC's attorneys stated in the letter than their client performed a search of its records but that the search revealed that "such records are no longer available with respect to the time period you specified."

- 3 -

exist." Ms. Vaughn therefore asked "to admit" four additional photographs, as well as a cell phone to indicate the date and time the photos were taken. Ms. Vaughn further asserted that she was awaiting additional records that would provide evidence of her fall, contrary to DMC's line of questioning in the general sessions trial that she did not report the fall to the proper medical providers. Finally, Ms. Vaughn produced records which she asserted demonstrated that she was treated for the injuries she claimed to have suffered in this lawsuit. Ms. Vaughn attached several documents to this filing, some of which had previously been submitted.

On April 3, 2019, DMC filed a reply to Ms. Vaughn's response in opposition to summary judgment. Therein, DMC again asserted that the multitude of documents and photographs presented by Ms. Vaughn were both irrelevant and insufficient to defeat their motion for summary judgment. Rather, DMC argued that Ms. Vaughn's trial testimony demonstrated that she "had clearly seen the standing water on the restroom floor and appreciated the condition before deciding to proceed into the restroom[.]" According to DMC, Ms. Vaughn failed in any way to negate this proof. DMC therefore argued that this evidence meant that Ms. Vaughn could not establish the essential element of duty and that her claim should be dismissed.

The trial court heard DMC's motion as scheduled on April 5, 2019. The trial court later entered a written order on April 23, 2019. Therein, the trial court ruled that Ms. Vaughn could not show the essential element of duty and, in the alternative, that she was as least 50% at fault for her injuries. Ms. Vaughn thereafter appealed. Disputes continued in the trial court over the preparation of the record, with the trial court granting DMC's objection to Ms. Vaughn's statement of the evidence. This order designated certain documents that would be included in the appellate record.

### ISSUES PRESENTED

The issues designated by Ms. Vaughn are somewhat difficult to discern. DMC frames Ms. Vaughn's issues in the following manner, which we reorder:

1. Whether the trial court erred in utilizing the proposed findings of fact and conclusions of law prepared by DMC's counsel at the trial court's request.

2. Whether the record on appeal was properly prepared/contains sufficient documents.

3. Whether the trial court erred in granting DMC's motion for summary judgment.

### STANDARD OF REVIEW

This case was dismissed at the summary judgment stage. "Summary judgment is appropriate only when the moving party establishes that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04."

*Woodruff v. Walker*, 542 S.W.3d 486, 493–94 (Tenn. Ct. App. 2017). In other words, "[a] grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (quotation marks and citations omitted). As the Tennessee Supreme Court explained,

> When the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

A trial court's "grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is de novo with no presumption of correctness." *Bowers v. Estate of Mounger*, 542 S.W.3d 470, 477 (Tenn. Ct. App. 2017) (citations omitted). Consequently, we "must make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* (quoting *Rye*, 477 S.W.3d at 250). In reviewing a summary judgment motion on appeal, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Shaw v. Metro. Gov't of Nashville & Davidson Cty.*, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019) (citations and quotations omitted).

## ANALYSIS

As an initial matter, we note that Ms. Vaughn is proceeding pro se in this appeal, as she was in the trial court. The law is well-settled in Tennessee, however, that pro se litigants must comply with the same standards to which lawyers must adhere. *Watson v. City of Jackson*, 448 S.W.3d 919, 926 (Tenn. Ct. App. 2014). As explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn.

Ct. App. Aug. 12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003) (internal citations omitted)). We keep these principles in mind in adjudicating this appeal.

## I.     The Record

We begin with Ms. Vaughn's contention that the record is incomplete. Ms. Vaughn objects to the fact that no transcript is included on appeal from the summary judgment motion hearing. Ms. Vaughn further asserts that the trial court refused to consider documents offered to the trial court, both at the summary judgment hearing, and in her request to supplement the record. Ms. Vaughn finally contends that the record on appeal does not contain three documents that she submitted to the circuit court clerk's office.

Ms. Vaughn's assertion that the grant of summary judgment must be vacated in the absence of this transcript is without merit. In the case cited by Ms. Vaughn, *Svacha v. Waldens Creek Saddle Club*, 60 S.W.3d 851 (Tenn. Ct. App. 2001), we vacated the grant of summary judgment because the transcript of the testimony that the trial court relied upon in granting the motion was not included in the record. *Id.* at 856. Later, in *Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710 (Tenn. 2005), our high court vacated the grant of summary judgment when the moving party did not submit an adequate record upon which to determine either the basis of the motion or the trial court's judgment. *Id.* at 713. In that case, the appellate record lacked not only a transcript of the summary judgment hearing, but also the memoranda filed in support of and in opposition to summary judgment. *Id.* at 712. Moreover, the trial court's order granting the motion was bare and conclusory. *Id.* at 711.

These cases do not compel the same result here. The Tennessee Supreme Court has held that a transcript from the summary judgment motion hearing is "normally not necessary" but may become necessary when the record lacks other documents that show the basis for the decision. *Jennings*, 173 S.W.3d at 712. In this case, the record on appeal contains both parties' memoranda filed in support of and in opposition to the motion for summary judgment. The trial court's order granting summary judgment also states what facts were relied upon in reaching the decision.[2] Moreover, the material relied upon by the trial court in granting the motion for summary judgment, i.e., the transcript from the general sessions court trial, is included in the record on appeal. Under these circumstances, a transcript of the summary judgment hearing is simply not necessary to determine the basis for the trial court's grant of summary judgment. Ms. Vaughn is therefore not entitled to relief based on its omission from the record.

Ms. Vaughn's remaining arguments concerning the record on appeal are somewhat more difficult to discern. To be sure, the record on appeal contains Ms. Vaughn's request

---

[2] But Ms. Vaughn takes issue with the trial court's order. This issue is addressed, *infra*.

to supplement the record, including many photographs purportedly of the area where she fell. It is therefore difficult to discern how Ms. Vaughn suffered any prejudice as to these specific documents. *See generally* Tenn. R. App. P. 36 ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). Moreover, Ms. Vaughn does not cite to any specific places in the record to support her assertions that the trial court refused certain documents. While it may have been DMC's burden to provide a transcript if necessary to support a grant of summary judgment in its favor, *see **Jennings***, 173 S.W.3d at 711, Ms. Vaughn has the "duty to prepare a record for our review that includes everything contained in the trial court record that is necessary for our examination of the issues [she] presented on appeal." ***McAllister v. Rash***, No. E2014-01283-COA-R3-CV, 2015 WL 3533679, at *8 (Tenn. Ct. App. June 5, 2015) (citing Tenn. R. App. P. 24). We therefore cannot conclude that this contention entitled Ms. Vaughn to relief on appeal with regard to the trial court's purported refusal to consider these documents.[3]

Ms. Vaughn finally argues that she filed three documents with the trial court clerk that are not included in the record on appeal. Following the notice of appeal in this case, it does appear that Ms. Vaughn filed a statement of the evidence, to which DMC objected Ultimately, however, the trial court entered an order granting DMC's objection and specifying certain additional items to be included in the record.[4] According to Appellant, she thereafter attempted on three separate occasions to submit additional documents for consideration. In this case, the notice of appeal was filed on May 20, 2019. Ms. Vaughn's first attempt to submit additional documents occurred on December 2, 2019.

Rule 24(c) provides that appellants may provide notice that additional documents should be included in the appellate record within fifteen days of the notice of appeal. Moreover, Rule 24(g) provides that "[n]othing in this rule shall be construed as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(g).

---

[3] We further note that this allegedly rejected evidence involved destroyed records regarding the maintenance on the premises, photographs of Ms. Vaughn's backpack, additional photographs of the premises, and a demonstration of how Ms. Vaughn fell. As discussed in detail *infra*, summary judgment in this case was based on DMC's contention that Ms. Vaughn was aware of the dangerous condition prior to her injury. While questions about the credibility of Ms. Vaughn's complaints as to the injury were raised in the general sessions court trial, these issues were not raised in DMC's motion for summary judgment. Indeed, DMC did not appear to dispute, for purposes of summary judgment, that Ms. Vaughn fell as a result of water on their premises, that the water was a dangerous condition of which DMC had sufficient notice, or that Ms. Vaughn suffered injuries as a result of the fall. As such, we fail to discern how this evidence, even if considered, alters the summary judgment analysis.

[4] Although the order does not specifically state that these documents are in addition to other documents previously designated, the record reflects as much, as additional documents are included in the appellate record.

- 7 -

Finally, while the trial court has authority to correct or modify the record, "[a]bsent extraordinary circumstances, the determination of the trial court is conclusive." Tenn. R. App. P. 24(e).

By Ms. Vaughn's own admission, these documents were not before the trial court when it considered DMC's motion for summary judgment. And Ms. Vaughn waited until well after the fifteen-day time period allotted in Rule 24(c) to seek correction of the record. Under these circumstances, we cannot conclude that she has shown extraordinary circumstances that would allow us to overturn the trial court's determination of the record. On the whole, we therefore conclude that the record is correct and adequate for appellate review.

## I. The Trial Court's Written Order

As best we can tell, Ms. Vaughn takes issue with the trial court's written order, as it was prepared by DMC's counsel, citing this Court's opinion in ***Smith v. UHS of Lakeside, Inc.***, No. W2011-02405-COA-R3-CV, 2013 WL 210250, at *1 (Tenn. Ct. App. Jan. 18, 2013), *aff'd*, 439 S.W.3d 303 (Tenn. 2014). In particular, Ms. Vaughn argues that the trial court failed to state the grounds for its decision orally before inviting DMC's counsel to prepare the written order and that because she was not provided a transcript of the summary judgment hearing there is no way to determine whether the trial court's oral ruling is reflected in the written order.[5] Although DMC argues that this issue was waived for failure to raise it in the trial court, we note that we have often considered this issue in the absence of the argument being raised in the trial court. *See, e.g.*, ***Regions Commercial Equip. Fin., LLC v. Richards Aviation Inc.***, No. W2018-00033-COA-R3-CV, 2019 WL 1949633, at *8 (Tenn. Ct. App. Apr. 30, 2019) (holding that the order was deficient despite no objection being made in the trial court); ***Bertuccelli v. Haehner***, No. E2017-02068-COA-R3-CV, 2018 WL 6199229, at *3 (Tenn. Ct. App. Nov. 28, 2018) (vacating the summary judgment order as in violation of ***Smith*** but noting no objection in the trial court as to the deficiencies); ***Koczera v. Steele***, No. E2015-02508-COA-R3-CV, 2017 WL 1534962, at *7 (Tenn. Ct. App. Apr. 28, 2017) (holding that the order was deficient despite no objection being made in the trial court). We will therefore address Ms. Vaughn's argument in this appeal.

The Tennessee Supreme Court's opinion in ***Lakeside*** is the seminal case on this issue. In that case, our high court did not categorically prohibit party-prepared orders. 439 S.W.3d at 315. Rather, party-prepared orders are allowed so long as two conditions are satisfied: "First, the findings and conclusions must accurately reflect the decision of the trial court. Second, the record must not create doubt that the decision represents the trial court's own deliberations and decision." ***Id.*** at 315–16.

---

[5] Ms. Vaughn does not appear to take issue with the amount of legal reasoning contained in the trial court's order. We discuss this issue briefly, *infra*.

It is true that the record on appeal does not contain a transcript from the summary judgment hearing that would enable us to compare the oral ruling to the written order. However, Ms. Vaughn's duty to prepare an adequate record extends to any argument that the trial court failed to comply with the requirements of *Lakeside*:

> In this case, Mr. McAllister declined to file either a transcript or Statement of Evidence to this Court in order for this Court to determine whether the order entered accurately reflects the independent deliberations of the trial court. . . . To the extent that the absence of a full record precludes this Court from reviewing the appellant's issues, the trial court's ruling is presumed to be correct. *See **Outdoor Management, LLC v. Thomas***, 249 S.W.3d 368, 379 (Tenn. Ct. App. 2007). Because Mr. McAllister failed to provide this Court with any evidence that the trial court's order denying the motion to set aside the final judgment of dismissal was anything other than the product of the trial court's independent deliberations, we must conclude that the trial court did not err in entering an order drafted by counsel for Mr. Rash.

*McAllister v. Rash*, 2015 WL 3533679, at *8.

The same is true in this case. Although Ms. Vaughn attempted to file a statement of the evidence, it was rejected by the trial court, and Ms. Vaughn does not specifically take issue with this ruling on appeal. Regardless, the trial court's rulings with regard to the completion of the record are conclusive absent extraordinary cause. *See* Tenn. R. App. P. 24(c) ("Absent extraordinary circumstances, the determination of the trial court is conclusive."). As such, we consider this issue solely with regard to the record presented in this appeal.

Neither Ms. Vaughn's brief nor the materials that are included in the record create doubt that the written order is both an accurate reflection of the trial court's order and a product of its independent judgment. Importantly, while the record on appeal does not contain DMC's proposed order,[6] Ms. Vaughn concedes in her brief that the written order ultimately entered by the trial court contains two paragraphs that were not included in the proposed order. Although Ms. Vaughn appears to take issue with the limited alterations made by the trial court, these alterations confirm that the order entered was not a verbatim

---

[6] Ms. Vaughn does include the proposed order as an attachment to her brief. We cannot consider documents attached to briefs that are not included in the appellate record. *See, e.g., **Carney v. State***, No. M2006-01740-CCA-R3-CO, 2007 WL 3038011, at *4 (Tenn. Crim. App. Oct. 17, 2007) (stating that "documents attached to an appellate brief but not included in the record on appeal cannot be considered by this court as part of the record on appeal") (internal citation omitted). Ms. Vaughn did designate the proposed order to be included in the record on appeal. The trial court, however, did not include this document in the record on appeal. Ms. Vaughn does not raise the exclusion of this particular document as an error on appeal.

copy of what was submitted by DMC, but was the trial court's own independent judgment. Consequently, Ms. Vaughn has not shown any error in the order entered by the trial court.

## II.    Premises Liability

Finally, we proceed to consider the substantive merits of Ms. Vaughn's claim, which was dismissed at the summary judgment stage. Thus, while DMC prevailed in the trial court, the burden remains on DMC to show that it was entitled to summary judgment. *See Rye*, 477 S.W.3d at 250 (holding that we review a trial court's grant of summary judgment motion de novo and that in undertaking this analysis we make a "fresh determination" of whether summary judgment is appropriate).

Ms. Vaughn's claim involves premises liability. A premises liability claim incorporates the elements of an ordinary negligence claim, along with specific elements related to notice:

> To establish a prima facie case for premises liability based upon negligence, the plaintiff must prove (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant that was below the standard of care, amounting to a breach of a duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. For the premises owner to be liable for a dangerous and defective condition on his property, the plaintiff must prove each of the elements of negligence and either (1) that the condition was caused or created by the premises owner or his agent, or (2) if the condition was created by someone other than the owner or his agent, that the premises owner had actual or constructive notice of the dangerous or defective condition prior to the accident.

*Williams v. Linkscorp Tennessee Six, L.L.C.*, 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006) (internal citation omitted).

In the typical premises liability summary judgment case, our review often concerns whether the dangerous condition was created by the premises owner or whether the premises owner had actual or constructive notice of the dangerous condition. *See generally, e.g., Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004); *Fowler v. City of Memphis*, 514 S.W.3d 732 (Tenn. Ct. App. 2016); *Williams v. Linkscorp Tennessee Six, L.L.C.*, 212 S.W.3d 293 (Tenn. Ct. App. 2006); *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314 (Tenn. Ct. App. 1996); *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45 (Tenn. Ct. App. 1995). That is not the relevant inquiry in this case, as DMC does not argue for purposes of summary judgment that it did not have notice of the dangerous condition alleged by Ms. Vaughn. Instead, DMC argues that because of the obvious nature of the condition, MS. Vaughn cannot prevail on the necessary element of duty. In the alternative, DMC argues that Ms. Vaughn's choice to confront the dangerous condition demonstrates

that she is at least 50% at fault for her injury and therefore barred from recovery through the doctrine of comparative fault. While these issues in this case appear facially simple, they are deceptively complex. We therefore begin our review with the necessary element of duty.

Tennessee courts have generally held that premises owners have a duty to use reasonable care to protect their customers from unreasonable risks of harm because of their superior knowledge of the premises. *Psillas*, 66 S.W.3d at 864 (citing *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn.1998)). "This duty includes maintaining the premises in a reasonably safe condition either by removing or repairing potentially dangerous conditions or by helping customers and guests avoid injury by warning them of the existence of dangerous conditions that cannot, as a practical matter, be removed or repaired." *Id.* (citing *Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Eaton v. McLain*, 891 S.W.2d 587, 593–94 (Tenn. 1994)). However, "[o]wners or occupiers of business premises are not insurers of their customers' safety." *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001) (citing *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 902 (Tenn. 1996)). As such, the owner's duty "coexists with the duty of a plaintiff not to proceed into a known danger." *Easley v. Baker*, No. M2003-02752-COA-R3-CV, 2005 WL 697525, at *2 (Tenn. Ct. App. Mar. 24, 2005) (citing *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994)). "In other words, a plaintiff in a premises liability case has a duty to see what is in plain sight." *Green v. Roberts*, 398 S.W.3d 172, 181 (Tenn. Ct. App. 2012).

Prior to Tennessee's adoption of comparative fault, a premises owner could "not be liable for an injury which occurs due to a condition which was 'obvious, reasonably apparent, or as well known to the invitee [or licensee] as to the owner.'" *Powell v. Gurkin*, No. W1999-00827-COA-R3-CV, 2000 WL 987301, at *4 (Tenn. Ct. App. July 10, 2000) (citing *Kendall Oil Co. v. Payne,* 293 S.W.2d 40, 42 (Tenn. 1955)). In 1998, however, the Tennessee Supreme Court abrogated the open and obvious doctrine, holding that "the traditional open and obvious rule eliminating a landowner's duty to one injured as a result of an open and obvious danger" was no longer viable following the adoption of comparative fault. *Coln v. City of Savannah*, 966 S.W.2d 34, 36–37 (Tenn. 1998), *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000).

Under the current law, "an open and obvious danger does not automatically result in a finding of no duty and therefore no landowner liability." *Id.* at 37. As such, a finding that a danger is open and obvious "does not, ipso facto, relieve a defendant of a duty of care." *Id.* at 43. Rather, in *Coln*, the Tennessee Supreme Court held that "the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm." *Id.* "Applying this analysis, if the foreseeability and gravity of harm posed by the defendant's conduct, even if 'open and obvious,' outweigh the burden upon the defendant to engage in alternative conduct, the defendant has a duty to act with reasonable care and the comparative fault

- 11 -

principles apply[.]" *Id.* at 37. Factors that courts may also consider in determining whether a duty was owed in the context of an open and obvious danger include: "[w]hether the danger was known and appreciated by the plaintiff, whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment, and whether there was some other reason for the defendant to foresee the harm." *Id.* at 42.

Thus, Tennessee courts now apply the general duty analysis to even those cases that involve an allegedly open and obvious danger. *See Rice v. Sabir*, 979 S.W.2d 305, 309 (Tenn. 1998) (applying the duty balancing test despite the allegation that the danger was open and obvious); *Freemon v. Logan's Roadhouse, Inc.*, No. M2007-01796-COA-R3-CV, 2009 WL 499471, at *3 (Tenn. Ct. App. Feb. 25, 2009) (applying *Satterfield* even where the dispute involved an allegedly open and obvious danger). As such, foreseeability serves as the "central component" of the duty analysis. *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 366 (Tenn. 2008). As the court explained,

> For the purpose of determining whether a duty exists, the courts' consideration of foreseeability is limited to assessing whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it. In this context, the courts are not concerned with the ultimate reasonableness, or lack of reasonableness, of the defendant's conduct. Rather, the courts are simply ascertaining whether the defendant was obligated to be vigilant of a certain sort of harm to the plaintiff.

*Id.* at 367 (internal quotation marks, alterations, and footnotes omitted) (quoting John C.P. Goldberg & Benjamin C. Zipursky, *The Restatement (Third) and the Place of Duty in Negligence Law,* 54 Vand. L.Rev. 657, 728–29 (2001)). This analysis requires the court to weigh a multitude of factors:

> When the existence of a particular duty is not a given or when the rules of the established precedents are not readily applicable, courts will turn to public policy for guidance. Doing so necessarily favors imposing a duty of reasonable care where a defendant's conduct poses an unreasonable and foreseeable risk of harm to persons or property. When conducting this analysis, the courts have considered, among other factors: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by the defendant; (4) the usefulness of the conduct to the defendant; (5) the feasibility of alternative conduct that is safer; (6) the relative costs and burdens associated with that safer conduct; (7) the relative usefulness of the safer conduct; and (8) the relative safety of alternative conduct.
>
> With these factors firmly in mind, Tennessee's courts use a balancing

approach to determine whether the particular risk should give rise to a duty of reasonable care. A duty arises when the degree of foreseeability of the risk and the gravity of the harm outweigh the burden that would be imposed if the defendant were required to engage in an alternative course of conduct that would have prevented the harm. The foreseeability and gravity of the harm are linked insofar as the degree of foreseeability needed to establish a duty is inversely proportional to the magnitude of the foreseeable harm. The greater the risk of harm, the less degree of foreseeability is required. During the balancing process, it is permissible for the courts to consider the contemporary values of Tennessee's citizens.

*Id.* at 365–66 (internal citations, quotation marks, and footnotes omitted).

Of course, this focus on policy does not remove foreseeability as the central focus of the analysis:

While every balancing factor is significant, the foreseeability factor has taken on paramount importance in Tennessee. This factor is so important that if an injury could not have been reasonably foreseen, a duty does not arise even if causation-in-fact has been established. Conversely, foreseeability alone is insufficient to create a duty. Thus, to prevail on a negligence claim, a plaintiff must show that the risk was foreseeable, but that showing is not, in and of itself, sufficient to create a duty. Instead, if a risk is foreseeable, courts then undertake the balancing analysis.

*Id.* at 366 (internal citations and footnotes omitted).

Although the duty analysis therefore involves the weighing of many factors, it remains an issue of law that the court must decide. *Satterfield*, 266 S.W.3d at 355 ("Although not originally required under the English common law, duty has become an essential element of all negligence claims, as well as a question of law to be determined by courts."). In the absence of duty, any negligence claim must fail. *Id.*

We will therefore begin by considering the undisputed facts to determine whether the water on the floor was in plain sight, before moving on to discuss the other duty factors. Generally, DMC alleges that it is undisputed that Ms. Vaughn noticed the water on the floor "as soon as she entered the restroom," but that she nevertheless chose to walk on the wet floor and then slipped and fell. In other words, DMC argues that the undisputed facts indicate that Ms. Vaughn had actual notice of the condition that she alleges caused her injury prior to her fall and that she voluntarily chose to traverse the dangerous condition. DMC cited to various parts of Ms. Vaughn's trial testimony in support of its position. The relevant sections of Ms. Vaughn's testimony include the following questioning from both Ms. Vaughn's counsel and counsel for DMC.

Q. Did you go to the restroom at Delta Medical Center?
A. Yes, I did.
Q. Okay. And could you tell the Court what happened when you went to the restroom?
A. Okay. When I went to the restroom, I had just gotten there. I catch public transportation, so I had on my coat and I had a backpack on my right shoulder. So I went into the restroom, and there was water there. As I was taking my -- a lot of – it was pretty much almost flooded. There was a lot of water there. So when I went to take my backpack and coat off, I slipped and fell. I lost my footing and fell there on the floor.

\* \* \*

Q. Okay. And so you walked in and went to the restroom. And you said, I think, that you used the restroom and were washing your hands and saw water everywhere; is that correct?
A. Yes.
Q. Okay. And you said -- I believe you testified at that time you saw a lot of water it almost looked like it was flooded?
A. Yes.
Q. So you were aware there was water all over the restroom at that time, right?
A. Well, when I went into the restroom.
Q. Right. When you went into the restroom, you saw the water?
A. Yes, I did.
Q. Okay. You were aware the water was there in the restroom, correct?
A. Yes.

\* \* \*

Q. So where is it that you fell exactly? Was it in the hallway or in restroom?
A. It was inside the restroom.
Q. Okay. Okay.
   So you saw the water in the restroom; is that correct?
A. That's correct.

DMC also relied on certain portions of the general sessions court judge's questioning:

Q. I just want to clarify one area of questions that we pursued here this morning. Just kind of take me real briefly back through this, the whole steps of your entering the bathroom. So when you entered the bathroom, did you see -- you know, you opened the door, you go to the restroom. Did you see

water?

A.     I saw some water but not as much as it was when I actually -- you know, it's around that corner. I have other pictures what I could, you know, kind of point it out to you and show you. When I went around the corner of the stalls, that's when I saw most of the water. There was some water there.

\* \* \*

Q.     Okay. So you walked through the door, you're taking your first few steps and did you attempt to go to the stall?

A.     I did. There was a scale -- when you first walk in to the door, there's a scale, standup scale like might be in a doctor's office or something, there was a scale right there. So I was going to take my backpack off and my coat and all that and, you know, just to get it off. And almost as soon as you make the corner, that's where the stalls are. You know, about three or four steps.

Q.     So did you take your backpack off?

A.     That's when I fell because I was trying to get those things. I lost my footing right there.

**Q.     Okay. All right. Now, where you were standing, in the whole area where you were standing, where you were taking your backpack off, before you did all this, did you see water?**

**A.     I saw water.**

\* \* \*

Q.     . . . . Which leads me to my next question. Was there another [restroom] on that floor?

A.     Yeah, there is another one around by the pharmacy. It's several -- a long – it's quite a quite a ways down the hallway. And like I said, I was on the bus. So I had to, you know -- you know, just I wasn't able to use the restroom anywhere because I got off the bus, then I had to walk into the building. And then I had to walk to the bathroom. So all that walking and I thought I just -- yeah, I should make it at least to the bathroom if I'm careful. Okay? So I had no idea it was that bad.

\* \* \*

Q.     So you fell and then you went into the stall?

A.     Yes, I had to. I mean, I didn't just run out without using it.

(Emphasis added). Ms. Vaughn disputed DMC's characterization of her testimony, pointing to much of the same testimony noted above, but also the following additional testimony:

- 15 -

Q. All right. And you also said when you began testifying that when you walked up you saw the water in the hallway, correct?
A. No, I didn't see any in the hallway. No.

* * *

Q. So when you walk in, do you see the sink first or do you see the stalls first?
A. I was looking toward the stalls. I didn't even look over that way.

* * *

A. . . . . I paid closer attention after I had fallen[.]

* * *

Q. So you went into the stall [after your fall]?
A. I did. I had to. After I got up -- I picked myself up and went into the - - into the stall. I had to use the restroom. I was already wet from having fallen.

Based on these facts, the trial court concluded that the undisputed facts demonstrated that Ms. Vaughn "saw and appreciated the water on the floor of the restroom, which she contends was a dangerous condition, prior to her fall and further that she voluntarily proceeded into the restroom despite this knowledge and subsequently fell." Based on the above testimony, we agree. Here, Ms. Vaughn was specifically questioned if she saw water before she attempted to take her backpack off. She answered in the affirmative. Although Ms. Vaughn points to her testimony that she did not see the water in the hallway, she also admits that: (1) she noticed "some water" immediately upon opening the restroom door; (2) that the restroom was "pretty much almost flooded"; (3) that she immediately looked toward the stalls, which area is where she eventually fell; and (4) she saw the water before she was even "standing" in the area where she ultimately attempted to remove her coat and backpack. This testimony clearly shows that she noticed the water on the floor when she entered the restroom, but that, despite that knowledge, she nevertheless voluntarily chose to traverse the wet floor and attempted to remove her coat and backpack while standing in the water. The trial court therefore did not err in concluding that the undisputed facts indicate that the dangerous condition alleged was "in plain sight." *Green*, 398 S.W.3d at 181.

Of course, the fact that the dangerous condition was open and obvious is not sufficient to end our inquiry. Rather, we must next consider whether an analysis of the foreseeability and gravity of the harm, as well as other factors, indicate that a duty was owed. *Coln*, 966 S.W.2d at 43; *see also Satterfield*, 266 S.W.3d at 365–67. Unfortunately, the trial court's order does not appear to engage in the second part of the analysis. Rather,

- 16 -

after discussing Ms. Vaughn's deficient efforts to present proof in response to DMC's motion, the trial court offers the following analysis:

> Because Ms. Vaughn had actual notice of the wet floor and its condition and, by her own testimony, the standing water was easily visible, Ms. Vaughn cannot establish that Defendant owed any duty to Plaintiff regarding the restroom floor, and Ms. Vaughn is at least 50% at fault, as a matter of law.

Respectfully, the trial court's ruling is deficient. In addition to the duties described *supra*, the trial court also has a duty to ensure that its rulings are adequately explained. *See Smith v. UHS of Lakeside*, 439 S.W.3d at 314 (noting that in addition to being a product of the trial court's independent judgment, the trial court's decision must be "adequately explained"). This has been described as requiring an explanation as to "why a particular result is correct based on the applicable legal principles[.]" *Id.* at 313 (citing Chad M. Oldfather, *Writing, Cognition, and the Nature of the Judicial Function*, 96 Geo. L.J. 1283, 1334 (2008)). The trial court's order contains many factual "findings," a detailed discussion of the general law surrounding premises liability, a thorough discussion of the proof presented, but very little discussion of the trial court's actual legal reasoning regarding its ultimate conclusion. Importantly, although foreseeability is the touchstone of the duty analysis, *see Satterfield*, 266 S.W.3d at 366, this factor is simply not mentioned in any way by the trial court. The trial court's order leads this court to believe that once the trial court concluded that the danger allegedly posed by the water in this case was open and obvious, this fact negated the essential element of duty. Clearly, however, a determination that a danger is open and obvious is only the tip of the iceberg in determining the legal issue of duty. *See id.* (setting forth a detailed and multi-factored test for determining duty); *Coln*, 966 S.W.2d at 36–37 (stating that duty should at least consider foreseeability, gravity of harm, and the burden to engage in alternative conduct).

DMC's efforts to support summary judgment on the issue of duty are similarly deficient. Puzzlingly, DMC supports its duty argument largely based on caselaw that was resolved not on the element of duty, but on the question of comparative fault. *See Sanders v. CB Richard Ellis, Inc.*, No. W2007-02805-COA-R3-CV, 2008 WL 4366124 (Tenn. Ct. App. Sept. 22, 2008) (affirming the trial court's finding that the plaintiff was more than 50% at fault for his injuries); *Easley v. Baker*, No. M2003-02752-COA-R3-CV, 2005 WL 697525 (Tenn. Ct. App. Mar. 24, 2005) (assuming that a duty was owed but holding that the plaintiff was at least 50% at fault for his injuries). Questions of duty and comparative fault, however, are distinct, as the question of comparative fault only becomes relevant once a duty is found. *See Green*, 398 S.W.3d at 177 (quoting *Coln*, 966 S.W.2d at 42) ("[T]he initial focus is on whether a duty exists—'only after a duty is established does comparative fault come into play.'"). Cases in which a duty was assumed so that the comparative fault issue could be addressed therefore appear to provide little support for DMC's argument regarding its lack or satisfaction of a duty here.

DMC's primary argument in this case is that "[a]ny duty [DMC] allegedly owed [Ms. Vaughn] is satisfied because she had actual knowledge of the allegedly dangerous condition of the restroom floor." In other words, DMC is arguing that it satisfied its duty because so much water had accumulated that the danger to Ms. Vaughn should have been obvious to her. To begin, this statement makes it difficult to discern whether DMC is arguing that it owed no duty to Ms. Vaughn or that it did not breach its duty to her. Following our review of the entire record, however, we are convinced that DMC is arguing that it owed no duty to Ms. Vaughn to prevent her injury due to the obvious nature of the alleged dangerous condition.[7] The trial court, as discussed above, also characterized its ruling in this manner.

Despite acknowledging the proper standard for determining whether a duty is owed, DMC's brief provides meager argument concerning the application of the standard. Indeed, the only discussion of foreseeability by DMC is that "[i]t was not foreseeable that Ms. Vaughn would continue to walk into the restroom given the [obvious danger]." We respectfully disagree. The problem with this argument is that it does little more than attempt to resurrect the open and obvious doctrine. Indeed, at least one Tennessee legal scholar has cautioned against allowing this exact type of analysis: "[The] court might be tempted to conclude that a defendant could not have foreseen a plaintiff's injury because the obviousness of the danger alone rendered the plaintiff's behavior unreasonable. If such reasoning is accepted, the obvious danger doctrine will survive in the duty portion of the analysis despite the *Coln* majority's claims that the doctrine has been abrogated." Brian P. Dunigan & Jerry J. Phillips, *Comparative Fault in Tennessee: Where Are We Going, and Why Are We in This Handbasket?*, 67 Tenn. L. Rev. 765, 817 (2000) [hereinafter Dunigan & Phillips] (arguing that "it will rarely be appropriate to conclude as a matter of law that the defendant could not foresee the plaintiff's injury because of the obviousness of a danger" because such "a conclusion effectively would resurrect the 'open and obvious danger' doctrine rejected by *Coln*"). Tennessee courts have likewise rejected similar attempts to argue a "somewhat veiled version" of the "open and obvious" doctrine. *Powell*, 2000 WL 987301, at *4 (Tenn. Ct. App. July 10, 2000) (rejecting the defendant's argument that no duty of care was owed to the plaintiff because he acted unreasonably). Indeed, the Tennessee Supreme Court has held that a defendant's assertion that a plaintiff confronted a known and obvious danger is properly analyzed under the principles of comparative fault, rather than duty. *See* *Perez v. McConkey*, 872 S.W.2d 897, 900 & 906 (Tenn. 1994) ("Secondary implied assumption of risk applies when the plaintiff, either reasonably or unreasonably, decides to encounter a known risk. . . . . [W]e do not consider it necessary or desirable to retain the doctrine of secondary implied assumption of risk as a separate defense. Rather, the reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault.") (footnote omitted).

---

[7] For example, DMC characterizes its argument in the trial court as that Ms. Vaughn "could not establish the essential element of duty owed to prevail on her claim[.]" In its brief, DMC also discussed the proper standard for determining whether a duty is owed under *Coln* and its progeny.

- 18 -

Moreover, an individual slipping on a wet floor is a foreseeable danger associated with wet floors in an area open to guests.[8] Indeed, DMC cites at least one case involving this exact scenario. *See Easley*, 2005 WL 697525, at *2 (involving a restaurant guest slipping on a puddle in a restroom). And multitudes of other cases considered by Tennessee courts have involved substantially similar situations. *See, e.g., Chambliss v. Shoney's Inc.*, 742 S.W.2d 271 (Tenn. Ct. App. 1987) (involving a restaurant patron that slipped in a restroom); *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45 (Tenn. Ct. App. 1995) (involving a grocery store guest who slipped in a bathroom); *McIntyre v. CBL & Assocs. Mgmt., Inc.*, No. 03A01-9905-CV-00189, 2000 WL 123979 (Tenn. Ct. App. Jan. 26, 2000) (involving a worker who slipped in an office restroom); *Cannon v. Loudon Cty.*, 199 S.W.3d 239 (Tenn. Ct. App. 2005) (involving an inmate who slipped and fell on his way to a restroom); *Heggs v. Wilson Inn Nashville-Elm Hill, Inc.*, No. M2003-00919-COA-R3-CV, 2005 WL 2051287 (Tenn. Ct. App. Aug. 25, 2005) (involving a slip and fall on water in a hotel); *Masters v. Wal-Mart Stores E., L.P.*, No. M2008-02752-COA-R3-CV, 2009 WL 2868750 (Tenn. Ct. App. Sept. 1, 2009) (involving a slip and fall on water in a store); *Osborne v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2017-01090-COA-R3-CV, 2018 WL 1040124 (Tenn. Ct. App. Feb. 22, 2018) (concerning a patron who slipped and fell at a convenience store). Although the plaintiffs did not prevail in every one of the above cases, none were resolved upon the court's determination that the injury was not foreseeable in the context of duty. Faced with such a mountain of authority to indicate that a fall is a foreseeable likelihood of the presence of accumulated water in an area open to guests,[9] DMC failed to put forth much more than conclusory assertions regarding the lack of foreseeability in this case. In light of that failure, we cannot conclude that DMC met its burden to establish that it was not "obligated to be vigilant of [the type] or harm" that befell Ms. Vaughn. *Satterfield*, 266 S.W.3d at 367.

Ms. Vaughn also testified without dispute that she was compelled to use the restroom by an urgent need. As we stated in a case applying *Coln*, a premises owner may have "reason to expect harm to the visitor from known or obvious dangers . . . for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Jackson v. Bradley*, 987 S.W.2d 852, 854 (Tenn. Ct. App. 1998)

---

[8] Ms. Vaughn testified that the staff was aware of the problem with water on the restroom floor as they told her that "it's always like that." Again, whether DMC had actual or constructive notice of the water is not at issue in this appeal.

[9] Indeed, these types of injuries are so commonplace that some Tennessee courts refer generally to these as "slip and fall" actions. *See, e.g., Souter v. Cracker Barrel Old Country Store, Inc.*, 895 S.W.2d 681 (Tenn. Ct. App. 1994) (describing the case as a "slip -and-fall action"); *Stone v. K-Mart, Inc.*, No. C.A. 134, 1989 WL 109479, at *1 (Tenn. Ct. App. Sept. 20, 1989) (describing the appeal as involving a "slip and fall case"); *Worsham v. Pilot Oil Corp.*, 728 S.W.2d 19 (Tenn. Ct. App. 1987) (describing the case as a "slip -and-fall action"). We certainly do not hold that a duty and foreseeability are to be assumed in all slip and fall cases. Rather, we merely assert that DMC has not met its burden to show a lack of duty in this particular case.

- 19 -

(citing *Restatement (Second) of Torts* § 343(A) (comment f)). In that case, we held that it was reasonable to expect a person crossing the parking lot where the injury occurred to be distracted by vehicular traffic. *Id.* Similarly, it is reasonable to expect that guests may suffer the same affliction and thereby be distracted upon entering a restroom.

DMC also presented absolutely no argument and no proof to suggest that the burden to engage in alternative conduct was heavy in this case. Here, Ms. Vaughn asserts that the simple placing of a sign, as had been placed in a different area of the premises, would have better alerted her to the danger. The burden to remove the water or at least place a sign alerting guests to its presence is therefore much less than some other premises liability cases in which we have held that no duty was owed. *See, e.g., Green*, 398 S.W.3d at 174 (involving a steel post that was embedded in a parking lot); *cf.* Dunigan & Phillips, 67 Tenn. L. Rev. at 817 ("The burden of correcting some dangers, such as natural conditions of the land (for instance, a steep hill or a lake), may be so great that it equals or outweighs the danger posed by the natural conditions."). And again, in the case that DMC asserts is most highly analogous to this case, a sign was not only placed in the puddle that the plaintiff slipped in that would have been visible to the plaintiff, but we also assumed in that case that a duty was owed. *Easley*, 2005 WL 697525, at *2. Thus, DMC simply failed to present any proof to indicate that the burden to warn or ameliorate the danger caused by the water would have been overly burdensome in this case.

As we previously explained, in reviewing the trial court's grant of summary judgment, "this court must make a fresh determination of whether the requirements of [Rule] 56 [of the Tennessee Rules of Civil Procedure] have been satisfied." *McCullough v. Vaughn*, 538 S.W.3d 501, 505 (Tenn. Ct. App. 2017) (citing *Rye*, 477 S.W.3d at 250). Although it is the plaintiff's burden to prove every element of negligence at trial, including duty, to obtain summary judgment, DMC had the burden to either affirmatively negate an essential element of Ms. Vaughn's claim or demonstrate that Ms. Vaughn's evidence is insufficient to establish her claim. *Rye*, 477 S.W.3d at 264. And while the existence of a duty may be "a given" in many cases, in order for a trial court to rule that the defendant met its burden to demonstrate that a duty is not owed, Tennessee law sets forth a complex, multi-step analysis that must be undertaken. *Satterfield*, 266 S.W.3d at 365. Here, our review reveals that the trial court granted summary judgment to DMC on the lack of a duty without engaging in the full analysis to determine whether a duty was owed. And DMC's argument on appeal likewise largely fails to address the second portion of the duty analysis. Even more importantly, DMC has provided no proof to suggest that the harm in this case was unforeseeable, or as to either the gravity of harm or its burden to engage in alternative conduct. *See Rye*, 477 S.W.3d at 264 (holding that party seeking summary judgment must do more than rely on "conclusory assertions[s]"). Under these circumstances, we conclude that the trial court's ruling that "Ms. Vaughn cannot establish that [DMC] owed any duty to [her] regarding the restroom floor" must be vacated. We therefore proceed to consider the alternative ground relied on by the trial court—comparative fault.

As previously discussed, where the defendant has pleaded the affirmative defense of the plaintiff's relative fault, the reasonableness of the plaintiff's conduct in confronting a risk should be determined under the principles of comparative fault. *See Perez*, 872 S.W.2d 905. Under comparative fault principles, "so long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover; in such a case, plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff." *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). In other words, a plaintiff who is at least 50% at fault for his or her injuries cannot recover. *See, e.g., Day v. Beaver Hollow L.P.*, 612 S.W.3d 32, 40 (Tenn. Ct. App. 2020), perm. *app. denied* (Oct. 7, 2020) (quoting *Ballard v. Serodino, Inc.*, No. E2004-02656-COA-R3-CV, 2005 WL 2860279, at *2 (Tenn. Ct. App. Oct. 31, 2005)) (noting that Tennessee comparative fault law bars recovery where the plaintiff "'was guilty of at least 50% of the fault'").

Comparative fault "is a question of fact within the jury's province, which should not lightly be invaded by the trial court." *LaRue v. 1817 Lake Inc.*, 966 S.W.2d 423, 427 (Tenn. Ct. App. 1997). Indeed, we have recently commented on "the infrequency of a trial court's determination of comparative fault at the summary judgment stage of the proceedings." *Lundell v. Hubbs*, No. E2019-02168-COA-R3-CV, 2020 WL 6867229, at *15 (Tenn. Ct. App. Nov. 23, 2020) (citing *LaRue v. 1817 Lake Inc.*, 966 S.W.2d 423, 427 (Tenn. Ct App. 1997) (noting that comparative fault is typically a jury issue); *Halmon v. Lane Coll.*, No. W2019-01224-COA-R3-CV, 2020 WL 2790455, at *6 (Tenn. Ct. App. Feb. 19, 2013) (same). "The task of comparing and allocating fault may be taken from the jury only when it can be determined beyond question (or alternatively, when reasonable minds cannot differ) that the plaintiff's fault is equal to or greater than the defendant's." *Henley v. Amacher*, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *6 (Tenn. Ct. App. Jan. 28, 2002).

The Tennessee Supreme Court has offered some guidance in determining comparative fault in the situation of what was once characterized as an open and obvious danger. *See Perez*, 872 S.W.2d at 905. As the court explained,

> Attention should be focused on whether a reasonably prudent person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk.

*Id.* We applied this test in *Sanders v. CB Richard Ellis, Inc.*, 2008 WL 4366124, at *4. In *Sanders*, the plaintiff sued the owner of a bank when he "traversed [an] icy slope" to get to the bank and fell. The trial court granted summary judgment in favor of the defendant, holding that the plaintiff was at least 50% at fault for his injuries. *Id.* at *1.

We affirmed the trial court's decision that the claim was barred by the doctrine of comparative fault. *Id.* at *4–5. The ***Sanders*** panel framed the relevant inquiry as whether the test articulated in ***Perez*** was met. *Id.* at *4 (quoting ***Perez***, 872 S.W.2d at 905). The court then noted the following undisputed facts: (1) that the plaintiff "knew and appreciated the dangerous condition of the icy parking lot prior to his decision to walk across it"; (2) that a drive-through window was an alternative to walking across the parking lot, but he chose not to use it; and (3) that "despite his awareness of the open and obvious dangerous condition and despite his knowledge that the drive-through was an available alternative to his crossing the icy lot, [the plaintiff] undertook to walk into the bank." *Id.* at *4–5. Under these circumstances, we held that the trial court correctly granted summary judgment under the doctrine of comparative fault, i.e., that the undisputed facts demonstrated that the plaintiff was at least 50% at fault for his injuries. *Id.*

DMC asserts that this Court should reach the same conclusion in this case, again citing ***Easley v. Baker***. In ***Easley***, the plaintiff sued the owners of a restaurant after he slipped on a puddle of water in the restroom of a "Bar and Grill." 2005 WL 697525, at *1. The plaintiff asserted that he did not immediately see the water before he slipped, but admitted that, had he looked at the floor before he proceeded into the restroom, he would have seen it. *Id.* at *3. In any event, a wet floor sign was placed in the puddle alerting guests to the situation. *Id.* Moreover, once the plaintiff took his first step toward the urinal area, he became cognizant of the water; rather than stop, however, the plaintiff continued several more steps on toward the urinal. *Id.*

The Court of Appeals concluded that summary judgment on this claim was proper. Specifically, we held that

> Accepting the facts in the light most favorable to the plaintiff, we have a plaintiff who is cold sober and unimpaired, and who asserts no difficulty with the lighting within the restroom. Between him and the urinal is a five-foot-wide, one-half-inch-deep puddle of water on the tile floor. Sitting to his right and within the five-foot-wide puddle of water is an 18-inch tall "wet floor" sign. He walks into the water and takes "a couple of steps" in the water and reaches a point six inches from the urinal. He then slips and injures himself. He sees the urinal, but sees neither the five-foot-wide, one-half-inch-deep puddle of water nor the 18-inch tall "wet floor" sign that is in the puddle. He takes not one, but at least two steps into the one-half-inch-deep puddle of water, moving to within six inches of the urinal before he slips.
>
> * * *
>
> The landlord had a duty to the plaintiff to either remove the water from the floor of the restroom or warn of its existence. Unless he is to be made an insurer of his premises, he performed his duty in this case. The plaintiff,

- 22 -

likewise, had a duty to see what was in plain sight, which includes both the accumulated water and the "wet floor" sign. He likewise has a duty to use his own senses to realize that he was walking through water as by his own testimony, he took at least two full steps into the accumulated water before he slipped.

*Id.* at *7–8. We further distinguished this case from one in which the plaintiff was held captive by the dangerous condition, noting that due to the fact that no evidence was presented that other stalls were occupied or that the plaintiff had an immediate need to urinate that "compelled his action." *Id.* at *7 (citing ***Grizzell v. Foxx***, 348 S.W.2d 815 (Tenn. Ct. App. 1961) (involving a claim that a landlord allowed a necessary pathway of an apartment building to become covered with snow and ice)). We therefore held that the plaintiff was at least 50% at fault for his injuries and that summary judgment was appropriate. *Id.* at *8.

From ***Perez***, ***Sanders***, and ***Easley***, two important considerations emerge: (1) whether the plaintiff confronted a risk that would have been obvious to a reasonable person; and (2) whether a reasonable alternative was presented to confronting the risk under the circumstances. We cannot disagree with the trial court that the undisputed facts lead only to the conclusion that the first element is met in this case—that Ms. Vaughn confronted a risk obvious to a reasonable person. The question then is whether Ms. Vaughn was presented with a reasonable alternative to avoid the danger posed by the flooded restroom.

DMC asserts that the undisputed facts indicate that Ms. Vaughn indeed had a reasonable alternative in this case, as Ms. Vaughn testified that another restroom was available on the same floor. We note, however, that Ms. Vaughn asserted that this restroom was "quite a ways down the hallway[.]" DMC offered no proof of the layout of the building where the fall occurred or the distance between the two restrooms. Additionally, Ms. Vaughn testified without dispute that due to her time on the bus to reach the building, she had an urgent need to use the facilities. Indeed, this claim is substantiated by Ms. Vaughn's undisputed testimony that even after she fell in the restroom, she still went into the stall to complete her purpose.

These facts distinguish the present case from ***Easley***. As previously discussed in ***Easley***, we concluded that the plaintiff was not a captive to the dangerous situation because the plaintiff did not testify to an urgent need to urinate and stalls were available for use that the plaintiff passed on his way to the urinal. 2005 WL 697525, at *7. In contrast, Ms. Vaughn specifically testified in this case that she was compelled to action by her urgent need to urinate. And the proposed alternative restroom was not merely steps away, as in ***Easley***, but some undetermined "ways" down the hallway.

Here, Ms. Vaughn's testimony concerning her urgent need to urinate was considered

by the trial court, but found to be unpersuasive.[10] Respectfully, we disagree. Importantly, "[s]ummary judgment 'should not replace a trial when disputed factual issues exist, because its purpose is not to weigh the evidence, to resolve factual disputes, or to draw inferences from the facts.'" *Downs v. Bush*, 263 S.W.3d 812, 815 (Tenn. 2008). While the non-moving party must do more than create some metaphysical doubt as the material facts in order to avoid summary judgment, *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015), this Court is still required to view the undisputed facts in the light most favorable to the plaintiff. *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019) (citing *Rye*, 477 S.W.3d at 286). It was therefore not the trial court's prerogative to deem Ms. Vaughn's facts either persuasive or unpersuasive, but merely to determine whether "reasonable minds could differ on the reasonableness of the plaintiff's actions in confronting a known risk and the extent of her fault[.]" *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 85–86 (Tenn. 2000).

Viewing the facts in the light most favorable to Ms. Vaughn, we must conclude that reasonable minds could differ as to whether Ms. Vaughn was presented with a reasonable alternative to using the flooded restroom in this case. Here, Ms. Vaughn was presented with an urgent need to urinate and another restroom that was some unknown distance away. Whether this restroom presented a reasonable alternative, or in fact Ms. Vaughn was held "captive" by the circumstances is for the jury to determine. *Easley*, 2005 WL 697525, at *7. In sum, in the absence of a reasonable alternative and given that she was undisputedly "compelled" in her action, reasonable minds could differ as to whether her decision to confront the risk was reasonable. Accordingly, the trial court's decision to grant summary judgment to DMC on the issue of comparative fault is vacated.

## CONCLUSION

The judgment of the Shelby County Circuit Court is vacated, and this case remanded to the trial court for all further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee DMC-Memphis, LLC, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[10] Specifically, the trial court stated that while it was "sympathetic [to Ms. Vaughn's plight], the Court finds this argument to be less than persuasive in the face of this Motion for Summary Judgment."